**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>UNIFIED SCHOOL DISTRICT NO. 500,<br>WYANDOTTE COUNTY, STATE OF KANSAS<br><br>Defendant. | ) | No. |

**COMPLAINT**

The United States of America sues Unified School District No. 500, Wyandotte County, State of Kansas, also publicly known as Kansas City, Kansas Public Schools (the "District"), to stop it from facilitating the secret "transitioning" of children's "gender identity" at school without their parents' knowledge or consent, in violation of the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, and the Protection of Pupil Rights Amendment ("PPRA"), 20 U.S.C. § 1232h.

The District maintains policies that direct staff to help students socially transition to a different gender at school and to withhold this information from parents as confidential. This conduct violates FERPA's guarantee that parents can see their children's school records, seek correction of those records, and prevent disclosure of identifying information without consent. This conduct also violates PPRA's guarantee that minor students will not be required to submit to any survey, analysis, or evaluation revealing sensitive information without prior written consent from their parents. The United States asks the Court to declare this scheme unlawful and enjoin it.

In support of its Complaint, the United States further alleges as follows:

## PARTIES

1. Plaintiff is the United States of America.

2. Defendant Unified School District No. 500, Wyandotte County, State of Kansas, also publicly known as Kansas City, Kansas Public Schools is a public entity located in Wyandotte County, Kansas. The District is governed by its locally elected board of education.

## JURISDICTION AND VENUE

### A. Generally

3. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 because this action arises under federal law and the United States is the Plaintiff.

4. Declaratory and injunctive relief is sought as authorized by 28 U.S.C. §§ 2201 and 2202.

5. Venue is proper in the District of Kansas pursuant to 28 U.S.C. § 1391(b) because the defendant resides in Kansas, and the events or omissions giving rise to this claim occurred in this judicial District of Kansas.

6. The United States is authorized to initiate this action under 20 U.S.C. § 1234c(a)(4).

### B. FERPA And PPRA Jurisdiction

7. Defendant is, and at all relevant times has been, a recipient of federal education funds subject to FERPA and PPRA.

8. The United States' cause of action arises under 20 U.S.C. § 1234c(a)(4), which authorizes the Secretary of Education to "take any . . . action authorized by law with respect to [a] recipient" that has failed to comply substantially with FERPA or PPRA, including an action for declaratory and injunctive relief brought in federal court.

9. On July 1, 2026, the Secretary of Education determined, following review, that the District was out of substantial compliance with FERPA's conditions, thereby satisfying the prerequisite to enforcement action set forth in § 1234c(a)(4).

10. On August 25, 2026, the Secretary of Education determined, following review, that the District was out of substantial compliance with PPRA's conditions, thereby satisfying the prerequisite to enforcement action set forth in § 1234c(a)(4).

11. Additionally, the United States has the inherent power to sue to enforce conditions imposed on the recipients of federal grants.

## FACTS

12. As a condition of federal funding, FERPA requires school districts to give parents the right to have access to their children's education records, the right to seek to have the records amended, and the right to have some control over the disclosure of personally identifiable information from the education records.[1]

13. FERPA broadly defines "education records" as "those records, files, documents, and other materials which (i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." § 1232g(a)(4)(A).

14. FERPA excludes only four types of information from the definition of "education record," none of which is relevant here: (i) a teacher's or administrator's personal notes kept solely by their maker; (ii) records created and maintained by a school's law-enforcement unit for law-enforcement purposes; (iii) employment records about individuals who work for but do not attend the institution; and (iv) treatment records for adult or postsecondary students that are created

[1] When a student turns 18 years old, or enters a postsecondary institution at any age, the rights under FERPA transfer from the parents to the student.

and used exclusively by health professionals in connection with providing medical or psychological care and are accessible only to those treating the student. § 1232g(a)(4)(B).

15. FERPA prohibits school districts from maintaining a policy that denies or effectively prevents a parent of a minor student from exercising the right to inspect and review the student's education records. § 1232g(a)(1)(A).

16. FERPA also requires school districts to provide parents with an opportunity for a hearing to challenge the content of their child's education records so that any information that is inaccurate, misleading, or otherwise violates the student's privacy rights can be corrected, deleted, or supplemented with a parental statement. § 1232g(a)(1)(D)(2).

17. Unless a school district obtains prior written parental consent, PPRA prohibits school districts from requiring minor students to submit to any survey, analysis, or evaluation that reveals sensitive information concerning one or more of the following eight protected areas (collectively, "Protected Categories"):

i. political affiliations or beliefs of the student or the student's parent;

ii. mental or psychological problems of the student or the student's family;

iii. sex behavior or attitudes;

iv. illegal, anti-social, self-incriminating, or demeaning behavior;

v. critical appraisals of other individuals with whom respondents have close family relationships;

vi. legally recognized privileged or analogous relationships, such as those of lawyers, physicians, and ministers;

vii. religious practices, affiliations, or beliefs of the student or student's parent; or

viii. income (other than that required by law to determine eligibility for participation in a program or for receiving financial assistance under such program).

§ 1232h(b).

18. Since at least 2017, the District has maintained a series of policies governing students who identify as "transgender" or "gender non-conforming."

19. On September 18, 2017, a District guidance document titled *Kansas City Kansas Public Schools Guidelines for Transgender and Gender Non-Conforming Students at School* ("Guidance Document") was included in an open public meeting presentation made to the District's board of education. The District's board of education accepted the report as an information item.

20. Although the District's board of education never formally voted to adopt the Guidance Document, the District nonetheless implemented a substantially similar policy titled *USD 500 Transgender and Gender Non-Conforming Students Internal Guidance Document* ("Transgender Guideline").

21. The District has used at least two versions of the Transgender Guideline since 2017.

22. The current version of the Transgender Guideline has been in use since 2024.

23. The following appears in the current version of the Transgender Guideline:

> A student or a student's parent or legal guardian should contact the school principal if a student is transgender or gender non-conforming and the student or the student's parent or legal guardian are seeking any related accommodations. If any staff member learns a student is transgender or gender non-conforming, that information should be relayed to the school principal without delay. The school principal should discuss available accommodations and resources with the student or the student's parent or legal guardian, including the availability of a planning meeting. If it becomes known that the student does not want the student's parent or legal guardian included at this stage, that request will be evaluated on a case-by-case basis. Such requests will be evaluated by the Executive Director of Student Services & Family Support, Director of Student Support Programs, Executive Director of Equity & Inclusion, and the district's attorney. When reviewing the request, the district will

> consider the student's age, the student's grade level, the student's welfare based on the information available to the district at that time, and any other relevant information.

Transgender Guideline, 1 at ¶ 2.

24. The following appears in the current version of the Transgender Guideline:

> Upon the request of a transgender or gender non-conforming student or that student's parent or legal guardian, the district will schedule a school planning meeting to discuss topics relevant to that student's school attendance including:
> a. Preferred name;
> b. Preferred gender;
> c. Preferred pronouns;
> d. School records/database;
> e. School support designee;
> f. Restroom and locker room use (including PE);
> g. Field trips
> h. Plans for gendered activities (e.g., sports);
> i. Additional resources
> j. Staff training plan; and
> k. Any other relevant topics.

Transgender Guideline, 1 at ¶ 3.

25. The following appears in the current version of the Transgender Guideline:

> The following individuals may be present at the school planning meeting:
> a. The student;
> b. The student's parents or legal guardian;
> c. A Student Services representative
> d. A representative of the building administration (principal or assistant principal);
> e. The building social worker or counselor;
> f. The building school psychologist;
> g. School nurse;
> h. The district Athletic Director (if applicable);
> i. The IEP case manager (if applicable); and
> j. Any other individual who might have relevant information regarding the student.

Transgender Guideline, 1-2 at ¶ 4.

26. The following appears in the current version of the Transgender Guideline:

> If the student asks to exclude the student's parent(s)/legal guardian(s) from the school planning meeting, that request will be evaluated on a case-by-case basis. Likewise, if the student does not want his or her transgender or gender non-conforming status disclosed to the student's parent(s)/legal guardian(s), that request will also be evaluated on a case-by-case basis. Such requests will be evaluated by the Executive Director of Student Services & Family Support, Director of Student Support Programs, Executive Director of Equity & Inclusion, and the district's attorney. When reviewing the request, the district will consider the student's age, the student's grade level, the student's welfare based on the information available to the district at that time, and any other relevant information.

Transgender Guideline, 2 at ¶ 5.

27. The Transgender Guideline requires any "plan developed at the school planning meeting" ("Gender Plan") to be "reduced to writing with a copy provided to the Executive Director of Student Services & Family Support and the parent," unless the District previously agreed to exclude the student's parent. Transgender Guideline, 2 at ¶ 6.

28. After the District creates a Gender Plan, the Transgender Guideline requires the District to hold an implementation meeting attended by District employees—but not the student's parent. Transgender Guideline, 2 at ¶ 7.

29. After the District holds the implementation meeting, the Transgender Guideline requires the District to "follow up with the student or the student's parent/legal guardian, as applicable, within 30 days of implementation of the plan" and hold an "annual school planning meeting" in order to "evaluate if the plan continues to meet the student's needs." Transgender Guideline, 2-3 at ¶¶ 9, 11.

30. The Transgender Guideline requires the District to maintain a copy of the Gender Plan. Transgender Guideline, 3 at ¶ 12.

31. The Transgender Guideline does not require the District to provide parents with an opportunity for a hearing to challenge a Gender Plan produced by the District, including any information that may be inaccurate, misleading, or otherwise violates the student's privacy rights.

32. The Transgender Guideline does not require the District to provide an opportunity for the correction or deletion of any inaccurate, misleading, or otherwise inappropriate information contained in the Gender Plan or to insert the parents' written explanation respecting the content of the Gender Plan.

33. The Transgender Guideline does not require the District to obtain prior written parental consent before requiring a student to submit to discussions, planning meetings, or plans that are likely to reveal information concerning the Protected Categories.

34. Convening a meeting attended by a student and multiple District employees, in their official capacities and in an official setting, without the student's parents' attendance at or knowledge of the meeting, is inherently coercive and would be viewed by a reasonable child as "required."

35. On August 14, 2025, the U.S. Department of Education (ED) opened a FERPA investigation into the District regarding concerns that it maintains a policy or policies interfering with parents' right to inspect and review their minor children's education records. (For ease of reference, the Guidance Document and the multiple versions of the Transgender Guideline will be referred to as the "Gender Policy.").

36. In its September 19, 2025, response, the District claimed its Gender Policy was irrelevant because the board of education "never adopted, approved, or utilized" the Gender Policy as a formal policy.

37. In an undated recording, Canise Salinas, Assistant Superintendent of Organizational Development, referred to a "transgender guideline," which she claimed is not made available to the Kansas City, Kansas Public Schools community but is instead safeguarded by certain "gatekeepers."

38. In an undated recording, Lauren Hernandez, Organizational Development Specialist, discussed how to "support[] students whose culture is against the LGBTQIA relationships," including asking a student about his willingness to share information with his father who is a preacher.

39. On July 1, 2026, ED notified DOJ of its determination, pursuant to 20 U.S.C. § 1234c(a), that there is reason to believe the District is failing to comply substantially with FERPA's requirements. Consistent with ED's determination, and the United States' authority and legal obligation to enforce the conditions of federal funding, ED authorized the DOJ to bring appropriate enforcement measures, to include any applicable judicial proceedings, against the District for its failure to substantially comply with 20 U.S.C. § 1232g's requirements.

40. On August 12, 2026, the United States advised the District that its Transgender Guideline is in violation of FERPA and PPRA.

41. On August 25, 2026, ED notified DOJ of its determination, pursuant to 20 U.S.C. § 1234c(a), that there is reason to believe the District is failing to comply substantially with PPRA's requirements. Consistent with ED's determination, and the United States' authority and legal obligation to enforce the conditions of federal funding, ED authorized the DOJ to bring appropriate enforcement measures, to include any applicable judicial proceedings, against the District for its failure to substantially comply with 20 U.S.C. § 1232h's requirements.

42. The United States determined the District would not voluntarily comply with FERPA and PPRA's requirements.

## CLAIMS

## COUNT I

### VIOLATION OF 20 U.S.C. § 1232g(a)(1)(A)

### Policy of Denying, or Effectively Preventing, Parents' Right to Inspect and Review Education Records

43. The United States realleges and incorporates by reference all preceding paragraphs.

44. Under 20 U.S.C. § 1232g(a)(1)(A), a school district must not have a policy of denying, or that effectively prevents, parents the right to inspect and review the education records of their children.

45. Section 1232g(a)(1)(A) prohibits not only individual denials of a parent's right to inspect and review education records, but also a recipient's maintenance of a policy of denying, or which effectively prevents, parents generally from exercising that right.

46. A parent retains "full rights" under FERPA unless the school district has been provided evidence of a court order, State statute, or other legally binding document relating to such matters as divorce, separation, or custody specifically revoking those rights. 34 C.F.R. § 99.4.

47. Even when a policy expressly permits some form of parental access, a policy may still "effectively prevent" parental access under FERPA. *See*, *e.g.*, 34 C.F.R. § 99.11 (allowing schools to charge a fee for copies but prohibiting the imposition of a fee that "effectively prevents a parent . . . from exercising the right to inspect and review the student's education records").

48. Practical impediments—such as lack of notice, concealment, or procedures designed to exclude parents from the creation of records—can render parents effectively unable to exercise their right to inspect and review their children's education records.

49. The Transgender Guideline contains practical impediments; they are, in fact, integral to its operation.

50. A record concealed from a parent—created in meetings the parent was deliberately excluded from and retained in administrative files without parental awareness—is *de facto* inaccessible. This is a policy that denies or effectively prevents parental access within the meaning of § 1232g(a)(1)(A).

**COUNT II**
**VIOLATION OF 20 U.S.C. § 1232g(a)(1)(D)(2)**
**Failure to Provide an Opportunity for a Hearing and Correction or Deletion**

51. The United States realleges and incorporates by reference all preceding paragraphs.

52. Under 20 U.S.C. § 1232g(a)(1)(D)(2), a school district must give parents an opportunity for a hearing to challenge the content of their child's education records and to secure the correction, deletion, or supplementation of any information that is inaccurate, misleading, or otherwise violative of the student's privacy rights.

53. In violation of these requirements, the District compels minor students and District employees to participate in a process that necessarily generates Gender Plans, which are part of the students' education records, the contents of which may be regarded by the student's parents as inaccurate or misleading.

54. The District fails to provide any opportunity—before, during, or after the process required by the Transgender Guideline—for parents to challenge, correct, delete, or supplement a Gender Plan's contents.

**COUNT III**
**VIOLATION OF 20 U.S.C. § 1232h(b)**
**Violation of Limits on Student Surveys, Analyses, or Evaluations Without Parental Consent**

55. The United States realleges and incorporates by reference all preceding paragraphs.

56. Under 20 U.S.C. § 1232h(b), a school district must not require a minor student to submit to any survey, analysis, or evaluation that reveals information concerning Protected Categories without prior written parental consent.

57. Many of the Protected Categories have relevance to the District's process for "accommodating" a student's "gender identity" and determining the scope of parental involvement in that process.

58. The Transgender Guideline requires District employees to act "[u]pon the request of a transgender or gender non-conforming student or that student's parent or legal guardian," including by convening a meeting of multiple District employees and the student, without requiring attendance by the student's parents.

59. The process outlined in the Transgender Guideline, which requires District employees to "evaluate" a student's request to exclude the student's parents, necessarily includes District employees administering surveys, analyses, or evaluations to minor students that reveal sensitive information in the Protected Categories that can be used to review and evaluate a student's request to exclude the student's parents and create a Gender Plan.

60. The District fails to require or obtain prior written parental consent before administering these surveys, analyses, or evaluations that reveal information concerning the Protected Categories.

61. The District knew or should have known that implementing the requirements of the Transgender Guideline—*i.e.*, convening a meeting attended by a student and multiple District employees, in their official capacities and in an official setting, without the student's parents' attendance at or knowledge of the meeting—is inherently coercive and would be viewed by a reasonable child as "required."

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

(a) A declaration that the District violates the conditions of FERPA by (i) maintaining the Transgender Guideline, which denies or effectively prevents parents from exercising their right to inspect and review the education records of their minor children, and (ii) failing to provide parents with an opportunity for a hearing to challenge the content of their child's education records so that any information that is inaccurate, misleading, or otherwise violates the student's privacy rights can be corrected, deleted, or supplemented with a parental statement;

(b) A declaration that the District violates the conditions of PPRA by maintaining the Transgender Guideline, which requires minor students to submit to a survey, analysis, or evaluation that reveals sensitive information concerning the protected categories listed at 20 U.S.C. § 1232h(b) without prior written parental consent;

(c) An injunction ordering the District, including all of its officers, employees, agents, and anyone working on their behalf, to:

(1) cease enforcement of the Transgender Guideline or any similar policy, internal guidance, or practice that denies parents their rights under FERPA or PPRA;

(2) provide parents an opportunity for a hearing to challenge the content of their children's education records, in order to insure that the records are not inaccurate, misleading, or otherwise in violation of the privacy rights of students;

(3) provide parents an opportunity (i) for the correction or deletion of any inaccurate, misleading, or otherwise inappropriate data contained in their children's education records and (ii) to insert into such records a written explanation of the parents respecting the content of such records;

(4) obtain prior written parental consent before requiring a minor student to submit to any survey, analysis, or evaluation that reveals information concerning:

(A) political affiliations or beliefs of the student or the student's parent;

(B) mental or psychological problems of the student or the student's family;

(C) sex behavior or attitudes;

(D) illegal, anti-social, self-incriminating, or demeaning behavior;

(E) critical appraisals of other individuals with whom respondents have close family relationships;

(F) legally recognized privileged or analogous relationships, such as those of lawyers, physicians, and ministers;

(G) religious practices, affiliations, or beliefs of the student or student's parent; or

(H) income (other than that required by law to determine eligibility for participation in a program or for receiving financial assistance under such program);

(d) Order such further relief as is necessary and appropriate to bring the District's policies and practices into compliance with 20 U.S.C. §§ 1232g and 1232h;

(e) Award the United States any applicable costs and fees; and

(f) Grant such other additional relief as the interests of justice may require.

DATED: September 1, 2026

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

JEFFREY MORRISON
Deputy Assistant Attorney General

JOHN P. MERTENS
Acting Chief, Educational Opportunities Section

/s/ Jordan K. Carpenter
JORDAN K. CARPENTER (TN No. 035074)
Counsel
LADAWN BURNETT (MO No. 68881)
GLENDON McCARTHY (AZ No. 024091)
Trial Attorneys
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
Telephone: (202) 514-3847
Email: jordan.carpenter2@usdoj.gov

RYAN A. KRIEGSHAUSER
United States Attorney

/s/ Bryan C. Clark
Bryan C. Clark (KS No. 24717)
Chief, Civil Division
District of Kansas
500 State Avenue, Suite 360
Kansas City, KS 66101
Telephone: (913) 551-6730
Email: bryan.clark@usdoj.gov

**ATTORNEYS FOR PLAINTIFF**
UNITED STATES OF AMERICA

**DETERMINATION OF PLACE OF TRIAL**

Pursuant to District of Kansas Civil Local Rule 40.2, the United States respectfully requests that the Court designate Kansas City, Kansas, as the place of trial.

/s/ *Jordan K. Carpenter*
JORDAN K. CARPENTER
Attorney for the United States