**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 26-2519-JAR-ADM** |
| **v.** | ) | |
| | ) | |
| **UNIFIED SCHOOL DISTRICT NO. 500, WYANDOTTE COUNTY, STATE OF KANSAS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

**I. Statement of Nature of the Matter Before the Court and Relief Sought.** Plaintiff's Complaint (ECF No. 1) asserts claims for declaratory and injunctive relief against Defendant for alleged violations of FERPA and PPRA premised solely on the existence of a Guidance Document that on its face has nothing to do with either statute. For the reasons set forth herein, Defendant respectfully requests that the Court deny the relief requested by Plaintiff, dismiss Plaintiff's Complaint (ECF No. 1) and, instead, declare that Defendant's Guidance Document does not violate FERPA or PPRA.

**II. Statement of Facts.**[1] At the dismissal stage, the facts are generally limited to those set forth in the pleadings including any written documents referenced therein as well as any public information about which the Court may take judicial notice without converting this motion into one for summary judgment.[2] The following facts, as opposed to conclusory allegations, are material to the motion before the Court:

---

1 These facts are admitted solely for purposes of this motion and should not be deemed admissions for purposes of trial. Wright, Miller & Kane, Fed.Prac. & Proc. § 2722 at 48.

2 "Facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment….At any stage of the proceedings the court may take judicial notice of a fact which is not subject to reasonable dispute, a requirement that is satisfied if the fact is 'capable of accurate and ready determination by

1. USD 500 is a unified school district and governmental subdivision of the State of Kansas, duly organized and existing pursuant to Article 6, § 5 of the Constitution of the State of Kansas and K.S.A. 72-1131, *et seq.*, which is governed by a board of education authorized to act by motion or resolution regular or special meetings that are open to the public.[3]

2. USD 500 maintains certain policies which pertain to student educational records. Declaration of Dawn Downing, Exhibit 1, hereto, ¶¶ 3-9.

3. USD 500 maintains and publishes information to parents and families. Declaration of Dawn Downing, Exhibit 1, hereto, ¶ 11.

4. The current version of the Guidance Document challenged by Plaintiff is attached as Exhibit H to the Declaration of Dawn Downing, Exhibit 1, hereto, ¶ 10.

5. The communications between the parties concerning the subject matter of this litigation referenced in the Complaint (ECF No. 1) are attached as Exhibits I-V to the Declaration of Dawn Downing, Exhibit 1, hereto, ¶¶ 12-25.

## III. Argument and Authorities.

**A. Legal standards applicable to a motion to dismiss**. To avoid dismissal, a plaintiff must plead "facts to state a claim to relief that is plausible on its face."[4] Plaintiff must provide more than just speculative allegations and "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do … ."[5] A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

resort to sources whose accuracy cannot reasonably be questioned.'" JP Morgan Trust Co. Nat. Ass'n v. Mid-America Pipeline Co., 413 F.Supp.2d 1244, 1258 (D.Kan. 2006) (quoting Fed.R.Evid. 201(b)(2)); see also Bain v. Continental Title Holding Company, Inc., No. 16-2326-JWL, 2017 WL 264545, at *1 (D.Kan. Jan. 20, 2017) (citing *Tal v. Hogan*, 453 F.3d 1244, 1264-65, n.24 (10th Cir. 2006)).

3 K.S.A. 72-1138; KOMA, K.S.A. 75-4317 through 75-4320a.

4 Bell Atl. Corp v. Twombly, 550 U.S. 544, 547 (2007).

5 Id. (internal citations omitted).

face.'"[6] Facial plausibility exists only when factual content is plead that allows the court to reasonably infer that the specifically named defendant is liable for the misconduct alleged.[7] However, the court is not required to accept plaintiff's conclusory allegations or legal conclusions as true.[8]

"A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[9] Thus, the Tenth Circuit utilizes a two-step process to analyze a motion to dismiss.[10] First, the court must identify conclusory allegations not entitled to the assumption of truth.[11] Second, the court must determine whether the remaining factual allegations plausibly suggest the plaintiff is entitled to relief.[12] "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations', but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[13] "Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."[14] Facts not alleged may not be presumed.[15] A plaintiff must set forth factual allegations respecting each material element necessary to sustain recovery under some actionable legal theory.[16]

---

6 Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

7 Id.

8 See Papasan v. Allain, 478 U.S. 265, 286 (1986); see also Twombly, 550 U.S. at 557 (a plaintiff cannot rely on conclusory allegations of a violation but must provide "factual enhancement" of how the alleged violation occurred to support her claims); Duckworth v. City of Kansas City, 243 Kan. 386 (1988); HoKanson v. Lichtor, 5 Kan.App.2d. 802 (1981) (legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness); Kruse v. Hawaii, 857 F. Supp. 741, 749 (D. Hawaii 1994) (legal conclusions made by the parties are not taken as true).

9 Iqbal, 556 U.S. at 680.

10 Hall v. Whiteman, 584 F.3d 859, 863 (10th Cir. 2009).

11 Id.

12 Id.

13 Iqbal, 556 U.S. at 678.

14 Id. at 687 (citations omitted).

15 Gallardo v. Board of County Commissioners, 857 F.Supp. 783, 786 (D.Kan. 1994).

16 Id. at 787.

When reviewing a factual attack on subject matter jurisdiction, a court may not presume the truthfulness of the plaintiff's factual allegations.[17] A court has wide discretion to allow affidavits, other documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts.[18] Thus, the Court may not simply rely on Plaintiff's conclusory allegation that jurisdiction exists based on the Secretary's arbitrary and speculative conclusion concerning substantial non-compliance with FERPA and PPRA based on the Guidance Document, but must instead review the actual facts and documents supporting such a conclusion before asserting jurisdiction over any of the asserted claims.

**B. Plaintiff lacks standing.** In order to demonstrate constitutional standing under Article III, a plaintiff must establish: (1) they suffered an injury in fact; (2) there is a causal connection between the injury suffered and the conduct and question; and (3) that it is likely, not speculative, that a favorable decision will redress the injury.[19] Plaintiffs suffer an "injury in fact" where they have endured "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."[20] The requisite causal connection between the injury and the conduct complained of requires the injury be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."[21] The party invoking the court's jurisdiction bears the burden of establishing these elements by the manner and degree of evidence required at each stage

---

17 Schmidt v. Cline, 127 F.Supp.2d 1169, 1175 (D. Kan. 2000).

18 Schmidt, 127 F. Supp. 2d at 1175; see also Marcus v. Kansas, Department of Revenue, 980 F.Supp. 398, 400 (D. Kan. 1997), *reversed on other grounds*, 170 F.3d 1305 (10th Cir. 1999) ("In reviewing a factual attack on subject matter jurisdiction, a district court must go beyond the allegations and evaluate the evidence presented by the parties.").

19 Pac. Frontier v. Pleasant Grove City, 414 F.3d 1221, 1228-29 (10th Cir. 2005) (*citing* Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

20 Id. (*quoting* Lujan, 504 U.S. at 560-61, 112 S.Ct. 2130) (cleaned up).

21 Lujan, 504 U.S. at 560, 112 S.Ct. 2130 (cleaned up)..

of the litigation.[22] Here, Plaintiff lacks standing to pursue the asserted claims because it has not suffered an injury in fact. Article III standing requires an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." [23] Here, the entirety of Plaintiff's claims are premised on conjecture and hypotheticals. Accordingly, jurisdiction is lacking over Plaintiff's claims.

**C. Plaintiff's claims on any guidance document, titled "USD 500 Transgender and Gender Nonconforming Students Internal Guidance Document" or otherwise ("Guidance Document") in existence prior to the current Guidance Document are moot.** Throughout the Complaint (ECF No. 1), Plaintiff makes reference to prior versions of the Guidance Document. Any claims premised on such prior versions are moot.

**D. Plaintiff's FERPA claims should be dismissed.** Plaintiff presents two (2) claims under FERPA each premised solely on a facial challenge to the Guidance Document. First, Plaintiff contends that the Guidance Document somehow denies or effectively prevents a parent of a minor student from exercising the right to inspect and review the student's educations records. Complaint (ECF No. 1), p. 4 ¶ 15; Count I, pp. 10-11 ¶¶ 43-50; 20 U.S.C. § 1232g(a)(1)(A). Second, Plaintiff contends that the Guidance Document somehow fails to provide parents with an opportunity for a hearing to challenge the content of their child's education records so that any information that is inaccurate, misleading, or otherwise violates the student's privacy rights can be corrected, deleted, or supplemented with a parental statement. Complaint (ECF No. 1), p. 4 ¶ 16; Count II, p. 11 ¶¶ 51-54; 20 U.S.C. § 1232g(a)(1)(D)(2). While Plaintiff asserts that the Secretary of Education determined, following review, that Defendant was out of substantial compliance with FERPA, the communications between the parties prior to the initiation of this litigation suggest

---

22 Id. at 561, 112 S.Ct. 2130..
23 *See* Lujan, 504 U.S. at 560-61, 112 S.Ct. 2130..

otherwise and instead demonstrate substantial, if not complete, compliance with FERPA by Defendant. Notably, Plaintiff alleges no facts, or even conclusory allegations, that any parent has actually been denied any right provided for under FERPA by virtue of the mere existence of the Guidance Document, let alone, the specific rights asserted – to inspect and review their student's educational records or to challenge the content of their student's educational records. Nor is there any allegation that any parent has actually complained about any violation of FERPA based on the Guidance Document. This underscores the fundamental problem with Plaintiff's claims, the Guidance Document is not intended to and does not even address FERPA or student educational records at all. Nor is it even a policy of the school district. As the name implies, a "guidance document does only what its name implies: It gives guidance."[24]

Defendant is a unified school district and governmental subdivision of the State of Kansas, duly organized and existing pursuant to Article 6, § 5 of the Constitution of the State of Kansas and K.S.A. 72-1131, *et seq.* Like any other Kansas unified school district, Defendant is governed by its locally elected board of education, which, subject to and in compliance with any applicable federal or state law or regulation, transacts all school district business and adopts such policies as it deems appropriate to perform its constitutional duty to maintain, develop and operate the local public schools within its boundaries.

Importantly, as Defendant conveyed to Plaintiff prior to the initiation of this lawsuit, Defendant maintains actual mandatory policies and notices which directly address and fully comply with FERPA. Specifically, Board Policy JR (Student Records), JRA (Types of Records), JRB (Release of Student Records), JRC (Disposition of Records), JRD (Hearing Request), IDAE (Student Privacy Policy) and N Police General Order 20.2 (FERPA Disclosures). Those policies,

---

24 Fairfax County School Board v. McMahon, --- F.4th ----, 2026 WL 3080601, * (4th Cir. 2026) (Cir. Judge Richardson, dissenting).

which are based on model policies developed by the Kansas Association of School Boards utilized by most Kansas school districts, are publicly available on USD 500's website, respectively at: https://kckps.community.highbond.com/home/policies/policydoc/c40f83b2-e48e-4901-9a87-3a9812fe9cb1; https://kckps.community.highbond.com/home/policies/policydoc/4afa948f-1524-4576-8bd2-f9b91811939f; https://kckps.community.highbond.com/home/policies/policydoc/de08d643-6ed2-428b-9733-bad92109de77; https://kckps.community.highbond.com/home/policies/policydoc/de8c8f86-8741-4b71-8eee-7783f7d792f4; https://kckps.community.highbond.com/home/policies/policydoc/28e44a55-cfc4-430f-91bf-f9eef695b971; https://kckps.community.highbond.com/home/policies/policydoc/d4b8a9ac-6e6e-4601-a28d-54091ae3b417; and https://kckps.community.highbond.com/document/35297bed-b6ab-4b5b-9f50-74621b901097/.

Additionally, information on FERPA is shared with families in the Parent Student Handbook, Annual Notice to Parents Authorized Student Date Disclosures, Family Educational Rights Privacy Act (FERPA), Media Waiver/Internet Publishing and Parents' Right to Know – all on the school district's website: https://www.kckschools.org/families-students/parent-student-handbook; and https://www.kckschools.org/families-students/privacy-information-for-parents-and-students.

Plaintiff does not challenge any of these policies or notices and, as set forth in these policies, Defendant fully complies with FERPA, including specifically parents' and eligible students' right to inspect and review their education records and parents' and eligible students' right to request that their education records be amended. Plaintiff does not allege that Defendant responds, nor does Defendant respond, to requests to inspect or access education records of

students in attendance in the school district differently for any parent, including parents of transgender students. Stated more plainly, Plaintiff does not actually allege that Defendant does or has prohibited parental access to student records or prevented a parent from seeking to amend a student record based on a student identifying as transgender and Defendant does not, nor has it ever, prohibited parental access to student records or prevented a parent from seeking to amend a student record based on a student identifying as transgender.

The Transgender Guidance upon which Plaintiff exclusively was created to help school district staff navigate parental and student requests in situations where the student is identifying as transgender. Contrary to the narrative being presented, Defendant fully and completely complies with FERPA and nothing in the Guidance Document prohibits or limits a parent's access to their child's educational records or ability to seek amendment of such records based a student's expressed desire to not share information about the student's gender identity. Instead, the Guidance Document fully anticipates the participation of a student's parents in seeking to support a transgender or gender non-conforming student's needs within the school environment

Although not specifically related to a student's educational records, the Guidance Document, in paragraph nos. 2 & 5 does try to provide guidance for how to navigate situations where a student does not want the student's parent or legal guardian included so that administrators and other staff are equipped to deal with those situations should they arise. Basically, if this situation occurs, the Guidance Document provides for the student's request to be elevated from the building principal to the upper level of the school district administration, to include legal counsel, to review and make a case-by-case determination on how to proceed. there are very few limited circumstances where a school district might, depending on the circumstances, not be able to notify the student's parents, such as: where the student is 18 years old and no longer a minor;

where the student has been emancipated; where parental rights have been terminated or otherwise limited by a judicial order; where there is an active law enforcement or Kansas Department for Children and Families ("DCF") investigation into abuse or neglect by the parent; or where there is reason to suspect abuse or neglect by the parent mandating a referral to DCF. These situations do not depend on the student's gender identity but are premised on other factors that potentially trigger other statutory or regulatory obligations of the school district which requires a case-by-case review. See e.g., 20 U.S.C. § 1232g(d), 34 CFR Sec. 99.3 & 99.5 ("Whenever a student has attained eighteen years of age, …, the permission or consent required of, and the rights accorded to the parents of the student shall thereafter only be required of and accorded to the student."). Although Plaintiff voiced concern over the language "other relevant information" in communication prior this litigation, Defendant responded that what information could be considered depends on the specific circumstances of each case. It is not possible, practical or prudent to provide guidance that does not allow for consideration of information that might not be thought of in advance that could impact the determination of how to deal with a particular student's request. An example of "other relevant information" might include whether a student has any disability or special need that impacts the student's cognitive ability to make independent decisions or where a guardian *ad litem* has been appointed by a court for the student. The bottom line remains that none of this has anything to do with FERPA and, aside from Plaintiff's arbitrary and tortured attempt to read a FERPA violation into the mere existence of the Guidance Document, no such violation exists and the claims premised on FERPA should be dismissed.

It is hard to understand how the Secretary was able to find a lack of substantial compliance where Defendant's actual policies complied with FERPA, there are no facts plead of any complaints or actual violations of any parent's rights, the communications up to the filing of this

lawsuit reflect Defendant's continued efforts to comply with requests and seek guidance and support from the Student Privacy Policy Office ("SPPO") to ensure that its policies, procedures and practices remain compliant.

**E. Plaintiff's PPRA claims should be dismissed.** Plaintiff's PPRA claim suffers from the deficiencies as its FERPA claims. As with the FERPA claims, Plaintiff's claims are novel and not supported by either the statutory language or the Guidance Document at issue. As reflected by the parties' pre-suit communications, the PPRA was not brought up at all until the last communication from Plaintiff prior to suit. The gist of Plaintiff's tortured reading of the PPRA is to suggest that, where a student tells a school official that the student identifies as transgender and also tells the school official that the student does not want the student's parent involved, any inquiry by the school official to ascertain why the student is making such a request somehow automatically constitutes a "survey, analysis, or evaluation" under the PPRA and that merely making such an inquiry therefore constitutes a violation of the PPRA. Complaint (ECF No. 1), Count III, pp. 11-12 ¶¶ 55-61; 20 U.S.C. § 1232h(b). It is of note that the U.S. Department of Education's general guidance on the PPRA was withdrawn contemporaneous with the filing of this litigation and the statutory language certainly does not speak to individual inquiries by school officials to ascertain in real time what issues, be they medical, emotional, abuse or otherwise might be impacting a student and provide for actions required of such officials by federal and state law. As such the PPRA claims should also be dismissed.

**IV. Conclusion.** For each of the above reasons, the relief requested by Plaintiff should be denied, Plaintiff's Complaint (ECF No. 1) should be dismissed, a declaration entered by the Court that Defendant's Guidance Document does not violate FERPA or PPRA and Defendant should be

awarded its costs, including reasonable attorneys' fees, and any additional relief this Court deems appropriate.

Respectfully submitted,

McANANY, VAN CLEAVE & PHILLIPS, P.A.
10 E. Cambridge Circle Drive, 300
Kansas City, Kansas 66103
Telephone: (913) 371-3838
Facsimile: (913) 371-4722
E-mail: ggoheen@mvplaw.com

By: /s/ Gregory P. Goheen
Gregory P. Goheen #16291
Ryan B. Denk #18868

Attorneys for Defendant Unified School District No. 500, Wyandotte County, Kansas

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of November, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system to:

Bryan C. Clark
Office of the United States Attorney – KCKS
500 State Avenue, Suite 360
Kansas City, KS 66101

Jordan Carpenter
950 Pennsylvania Avenue NW
Washington, DC 20530
Attorneys for Plaintiff

/s/ Gregory P. Goheen